T.C. Memo. 1997-39


UNITED STATES TAX COURT


BARRY S. MICHELSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

SHELLEY A. MICHELSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 7250-94, 21182-94.          Filed January 22, 1997.


Barry S. Michelson, pro se.

Shelley A. Michelson, pro se.

<u>Carmino J. Santaniello</u>, for respondent.


MEMORANDUM OPINION


    RAUM, <u>Judge</u>:  The Commissioner determined deficiencies in
petitioners' 1991 Federal income taxes as follows:

| Petitioner | Deficiency | Sec. 6651(a)(1) | Sec. 6654(a) |
|------------|-----------|-----------------|--------------|
| Barry Michelson | $979 | $244.75 | -0- |
| Shelley Michelson | 50,870 | 8,168.00 | $1,450 |

Pursuant to respondent's uncontested motion, the cases have been consolidated for "trial, briefing and opinion."  At issue is whether either petitioner is entitled, under sections 6402 and 6511(a), to a refund of overpayment of taxes withheld from petitioner Shelley A. Michelson's wages, dividends, and interest. Petitioners will sometimes be referred to simply as Barry and Shelley, respectively.  The facts have been stipulated.[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.

Petitioners are husband and wife.  They resided in Stamford, Connecticut, when they filed their respective petitions in these cases.  Petitioners filed a timely request for an automatic 4-month extension of time to file their 1991 return.  As a result of the extension, their return was due on August 15, 1992, a Saturday.  The following Monday, August 17, 1992, was not a legal holiday in the District of Columbia or the State of

---

[1]The Court ordered simultaneous briefs.  However, although the Government filed its opening brief, the Court has been informed that petitioners do not intend to file any brief.

Massachusetts.[2]  See sec. 7503.  However, petitioners did not file their 1991 joint return until October 26, 1994, after individual notices of deficiency had already been issued to each spouse.

During the taxable year 1991, Barry was a self-employed consultant.  On Schedule C of their 1991 return, petitioners reported a net $24,572 loss with respect to Barry's consulting activities.  During 1991, Barry received compensation in the total amount of $634, summarized as follows:

| Employer | Amount | Withholdings |
|----------|--------|--------------|
| City of Stamford | $165 | -0- |
| Town of Greenwich | 469 | -0- |

During 1991, Shelley received wages from AMBAC Indemnity in the total amount of $100,571.97, from which her employer withheld Federal income taxes in the amount of $17,831.11.  She received dividends from Manufacturer's Hanover Trust, as transfer agent, in the amount of $652, from which Manufacturer's withheld Federal income taxes in the amount of $128.  She also received interest income from Citybank in the amount of $1,203, from which the bank withheld Federal income taxes in the amount of $240.

_____

[2]Although petitioners resided in Connecticut, their return was to be filed with the Andover Service Center in Andover, Massachusetts.  Whether the filing date is a legal holiday is determined by reference to the State where the internal revenue district office is located.  Sec. 7503.

Petitioners had not yet filed their 1991 return when the notices of deficiency were issued. A separate individual notice of deficiency was sent to Barry on February 23, 1994, and a separate individual notice of deficiency was sent to Shelley on August 18, 1994. The statutory notice to Barry was issued by the Andover Service Center. The statutory notice to Shelley was sent by the Hartford District Director. Both statutory notices were based upon wage and other information obtained by the IRS from third party sources.

On their 1991 return, petitioners reported taxable income in the amount of $46,180 and Federal income tax withholdings in the amount of $18,199, resulting in a claimed overpayment of $9,690. The Commissioner accepted the 1991 return as filed, but disallowed as untimely petitioners' claim for refund reflected on that return.

The Government has conceded that there is no deficiency in income tax due from either petitioner for 1991, and that neither petitioner is liable for the additions to tax under sections 6651(a)(1) and 6654(a). At issue is whether either petitioner is entitled to a refund of the $9,690 overpayment.

Section 6402 provides:

> In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c)

and (d), refund any balance to such person.  [Emphasis added.]

It has long been recognized by this Court that a husband and wife are treated as separate taxpayers even where they have filed a joint return.  Rodney v. Commissioner, 53 T.C. 287, 307 (1969). Since petitioners must be treated as separate taxpayers, and since their notices of deficiency were issued at different times, we must determine separately each petitioner's eligibility for a refund of the overpayment.

## 1.  Barry

"Where spouses claim a refund under a joint return, the refund is divided between the spouses, with each receiving a percentage of the refund equivalent to his or her proportion of the withheld tax payments."  Gordon v. United States, 757 F.2d 1157, 1160 (11th Cir. 1985); Gens v. United States, 230 Ct. Cl. 42, 673 F.2d 366 (1982); see also Rosen v. United States, 397 F. Supp. 342, 344 (E.D. Pa. 1975).  Rev. Rul. 80-7, 1980-1 C.B. 296, as amplified by Rev. Rul. 85-70, 1985-1 C.B. 361, sets out a formula for determining each spouse's share of the overpayment.

The parties have stipulated that no taxes were withheld from Barry's wages for 1991, and that all of the taxes responsible for the overpayment were withheld from Shelley's income.  Since all of the taxes were withheld from her income, Barry has no interest in any portion of the overpayment and thus is not entitled to a

refund. We note that this result is consistent with Rev. Rul. 74-611, 1974-2 C.B. 399.

2. Shelley

Since the overpayment was attributable entirely to taxes withheld from Shelley's income, she alone has any interest in the refund of the overpayment. However, she must demonstrate that her claim for refund was timely.

Section 6512(b)(3) provides:

> **(3) Limit on amount of credit or refund.** No such credit or refund shall be allowed or made of any portion of the tax unless the Tax Court determines as part of its decision that such portion was paid--
>
> * * * * * * *
>
> (B) within the period which would be applicable under section 6511(b)(2), (c), or (d), if on the date of the mailing of the notice of deficiency a claim had been filed (whether or not filed) stating the grounds upon which the Tax Court finds that there is an overpayment[.] * * *

Section 6511(b)(2)(B) provides that when a claim for refund is not made within the 3-year period described in section 6511(a), the amount of the credit or refund may not exceed the amount of tax paid within the 2 years preceding the claim for refund.

Section 6511(a) provides that a claim for refund must be made within 3 years from the time the return was filed or "if no return was filed by the taxpayer, within 2 years from the time the tax was paid." Under sections 6513(a) and (b)(1), the taxes attributable to Shelley's income were deemed withheld on April

15, 1992.[3]  And, pursuant to section 6513(a), petitioners'
extension to August 17, 1992, did not change the due date of the
tax from April 15, 1992.  The notice of deficiency was issued to
Shelley on August 18, 1994.  Petitioners thereafter, on October
26, 1994, filed their 1991 return, which served as their claim
for refund.  Under section 6511(a), if the 3-year period from
filing the return applies, Shelley is entitled to a refund.  If
the 2-year period applies, the limitations period has expired,
and Shelley is barred from receiving a refund.

---

[3]Section 6513.   Time Return Deemed Filed and Tax Considered
                Paid

(a)  Early Return or Advance Payment of Tax.--

     For purposes of section 6511, any return filed before
the last day prescribed for the filing thereof shall be
considered as filed on such last day.  For purposes of
section 6511(b)(2) and (c) and section 6512, payment of any
portion of the tax made before the last day prescribed for
the payment of the tax shall be considered made on such last
day.  For purposes of this subsection, the last day
prescribed for filing the return or paying the tax shall be
determined without regard to any extension of time granted
the taxpayer and without regard to any election to pay the
tax in installments.

(b)  Prepaid Income Tax.--For purposes of section 6511 or
     6512--

     (1)  Any tax actually deducted and withheld at the
     source during any calendar year under chapter 24 shall,
     in respect of the recipient of the income, be deemed to
     have been paid by him on the 15th day of the fourth
     month following the close of his taxable year with
     respect to which such tax is allowable as a credit
     under section 31.  [Sec. 6513(a) and (b)(1).]

This case is governed by Commissioner v. Lundy, 516 U.S. ___, 116 S. Ct. 647 (1996).  In Lundy, income taxes of the taxpayers (husband and wife) were withheld from their wages during 1987.  On September 26, 1990, the Commissioner issued a notice of deficiency to the taxpayer-husband.  Three months later, on December 22, 1990, the taxpayers filed their 1987 joint return.  Id. at ___, 116 S. Ct. at 649.

The Court framed the issue as follows:  "[W]e must determine which of these two look-back periods to apply when the taxpayer fails to file a tax return when it is due, and the Commissioner mails the taxpayer a notice of deficiency before the taxpayer gets around to filing a late return."  Id. at ___, 116 S. Ct. at 652.  The Supreme Court held that the 2-year period applied:

> We reach this conclusion by following the instructions set out in section 6512(b)(3)(B).  The operative question is whether a claim filed "on the date of the mailing of the notice of deficiency" would be filed "within 3 years from the time the return was filed."  * * *  In the case of a taxpayer who does not file a return before the notice of deficiency is mailed, the claim described in section 6512(b)(3)(B) could not be filed "within 3 years from the time the return was filed."  No return having been filed, there is no date from which to measure the 3-year filing period described in section 6511(a).  Consequently, the claim contemplated in section 6512(b)(3)(B) would not be filed within the 3-year window described in section 6511(a), and the 3-year look-back period set out in section 6511(b)(2)(A) would not apply.  The applicable look-back period is instead the default 2-year period described in section 6511(b)(2)(B), which is measured from the date of the mailing of the notice of deficiency, see section 6512(b)(3)(B).  The taxpayer is entitled to a refund of any taxes paid within two years

prior to the date of the mailing of the notice of deficiency.

Id. at ___, 116 S. Ct. at 652.

The Lundy Court also stated that:

[A] delinquent filer's entitlement to a refund in Tax Court depends on the date of the mailing of the notice of deficiency. Section 6512(b)(3)(B) tolls the limitations period, in that it directs the Tax Court to measure the look-back period from the date on which the notice of deficiency is mailed and not the date on which the taxpayer actually files a claim for refund. But in the case of delinquent filers, section 6512(b)(3)(B) establishes only a 2-year look-back period, so the delinquent filer is not assured the opportunity to seek a refund in Tax Court: If the notice of deficiency is mailed more than two years after the taxes were paid, the Tax Court lacks jurisdiction to award the taxpayer a refund.

Id. at ___, S. Ct. at 653.

Here, the notice of deficiency, dated August 18, 1994, was mailed to Shelley more than 2 years after the taxes were deemed paid on April 15, 1992. Under Lundy, since no tax return or claim for refund was filed until after the notice of deficiency was issued, Shelley is not entitled to a refund. See Lundy v. Commissioner, 516 U.S. ___, 116 S.Ct. at 653. We anticipated that result in Allen v. Commissioner, 99 T.C. 475 (1992), affd. 23 F.3d 406 (6th Cir. 1994). We there commented upon the seemingly harsh consequences:

As is true in many of the cases in this field, the result may seem harsh in view of an actual overpayment, but petitioner failed to file his income tax return more promptly, and the statute is precise. The unhappy result for petitioner is the consequence of a "problem of * * * [his] own creation". Berry v. Commissioner,

97 T.C. 339, 345 (1991).  The situation is not an unfamiliar one, and has been before us in a variety of other circumstances.  Cf., e.g., <u>White v. Commissioner</u>, 72 T.C. 1126, 1130-1134 (1979); <u>Hosking v. Commissioner</u>, 62 T.C. 635, 642-644 (1974); and a number of memorandum opinions cited in <u>Berry v. Commissioner</u>, <u>supra</u> at 345 n.7.

<u>Id.</u> at 480.

Since, as we have already concluded above, neither Barry nor Shelley is entitled to a refund in these cases,

<u>Decisions will be entered</u>

<u>for respondent</u>.